UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACCUIRE LLC, | No. 2:24-cv-02018-DAD-CKD |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITHOUT LEAVE TO AMEND |
| MEREDITH CPAS P.C., et al., | |
| Defendants. | (Doc. Nos. 29, 30) |

This matter is before the court on the motions to dismiss filed on April 17, 2025 on behalf of defendant Vensure Employer Services Inc. ("defendant Vensure") (Doc. No. 29) and defendant Meredith CPAs P.C. ("defendant Meredith") (Doc. No. 30). On April 29, 2025, the pending motions were taken under submission on the papers. (Doc. No. 32.) For the reasons explained below, defendants' motions to dismiss plaintiff's complaint will be granted.

**BACKGROUND**

On April 29, 2024, plaintiff initiated this action by filing its complaint in the Sacramento County Superior Court. (Doc. No. 1-1 at 2.) On July 25, 2024, defendants removed the action to this federal court. (Doc. No. 1.)

In its operative first amended complaint ("FAC"), plaintiff alleges as follows. Plaintiff and defendant Vensure are both professional employer organizations providing services related to

1

1  workers' compensation insurance, payroll, employee benefits, and human resources to their
2  staffing-company clients.  (Doc. No. 28 at ¶¶ 3, 5.)  Defendant Vensure's chief operating officer
3  ("COO") was Kara Childress, though defendant Vensure was fully owned by Alex Campos.  (*Id.*
4  at ¶ 7.)  Alex Campos also owned Amazing Insurance, Inc. ("Amazing").  (*Id.*)  Defendant
5  Meredith is a corporation that provides accounting and auditing services.  (*Id.* at ¶ 4.)

6  In another related action previously pending before the undersigned (Case No. 2:19-cv-
7  01349, hereinafter "the *Amazing* action"), plaintiff Accuire alleged that Amazing, Campos,
8  Childress, "and others" attempted "a fraudulent take-over of plaintiff through various
9  misrepresentations, omissions, concealments and unlawful acts."[1]  (*Id.* at ¶ 8.)  During the
10 attempted takeover described in the *Amazing* action, Childress allegedly took control of plaintiff's
11 finances and, as COO of defendant Vensure, managed the debt between plaintiff and defendant
12 Vensure.  (*Id.* at ¶ 9.)

13 In 2018, plaintiff was required to provide Sterling National Bank ("the Bank") with an
14 independently audited financial statement.  (*Id.* at ¶ 10.)  Failure to do so would place plaintiff out
15 of compliance with the terms of its loan from the Bank.  (*Id.*)  Childress and defendant Vensure
16 arranged for plaintiff's audit to be performed by defendant Meredith, a firm with which plaintiff's
17 management had no prior dealings.  (*Id.* at ¶ 11.)  Childress failed to disclose that she had been
18 made a partner in defendant Meredith in 2017 after delivering defendant Vensure as a client to
19 defendant Meredith.  (*Id.* at ¶ 13.)  A conflict of interest therefore existed, because Childress was
20 both a partner in defendant Meredith, the auditing firm, and an officer in defendant Vensure with
21 direct involvement in the financial affairs of plaintiff, the client.  (*Id.* at ¶ 25.)  Defendant
22 Meredith, at the urging of defendant Vensure, failed to maintain the required objectivity of an
23 independent auditor and failed to remain free of conflicts of interests.  (*Id.*)

24 "As a result of this conflict of interest," defendant Meredith prepared an inaccurate audit
25 report that mischaracterized a debt owed by Amazing to plaintiff as instead being "goodwill"
26 ("the Audit").  (*Id.* at ¶ 17.)  In truth, Amazing had agreed to pay $2.7 million to plaintiff's

---

[1] On January 27, 2025, the court dismissed the *Amazing* action pursuant to the parties' stipulation and Federal Rule of Civil Procedure 41(a)(1)(A)(ii).  (*See Amazing*, Doc. No. 139.)

owners, but the Audit prepared by defendant Meredith stated that plaintiff—not Amazing—was responsible for paying the $2.7 million. (*Id.* at ¶ 18.) The Audit omitted Amazing's obligation to reimburse plaintiff for the $2.7 million. (*Id.* at ¶ 20.) Defendant Meredith knowingly mischaracterized the debt at the request of defendant Vensure in order to further the fraudulent scheme to strip plaintiff of its assets and revenues. (*Id.* at ¶ 26.)

Due to the Audit stating that plaintiff, not Amazing, was obligated to pay the $2.7 million debt, the Bank found plaintiff to be out of compliance with its loan. (*Id.* at ¶ 21.) At the time of the Audit, plaintiff was drawing down millions of dollars on a line of credit with the Bank. (*Id.*) The false Audit damaged plaintiff's relationship with the Bank, seriously disrupting plaintiff's business. (*Id.*)

On September 11, 2019, plaintiff filed a counterclaim in the *Amazing* action and joined Childress as a counter-defendant in that action.[2] (*Id.* at ¶ 12.) Plaintiff did not refer to the Audit or defendant Meredith in its counterclaim in *Amazing* because, at that time, plaintiff was unaware of the conflict of interest between plaintiff and the supposedly independent Meredith. (*Id.*) Defendant Meredith concealed the conflict of interest at the time it was retained by plaintiff. (*Id.*) The engagement letter sent by defendant Meredith to plaintiff stated the following: "[T]o ensure that MeredithCPA's independence is not impaired under the AICPA Code of Professional Conduct, you agree to inform the engagement partner before entering into any substantive employment discussions with any of our personnel." (*Id.*) The AICPA Code of Professional Conduct referenced in the letter further provides: "A member should maintain objectivity and be free of conflicts of interest in discharging professional responsibilities. A member in public practice should be independent in fact and appearance when providing auditing and other attestation services." (*Id.*) It was therefore reasonable for plaintiff to believe at the time it filed the counterclaim, "without further inquiry," that the Audit was performed by Meredith in a

/////

---

[2] The docket in the *Amazing* action reflects that Childress was not initially named as a defendant in that action and that plaintiff in fact joined Childress as a third-party defendant, not as a counter-defendant. Regardless, this distinction is not material to the resolution of the pending motions.

3

1   professional and independent manner free from undue influences resulting from a conflict of
2   interest.  (*Id.*)

3   Furthermore, "[a]s alleged in Accuire's Counterclaim in the *Amazing* litigation," Childress
4   was deeply involved in and had authority to control plaintiff's financial affairs.  (*Id.* at ¶ 15.)
5   Childress could withdraw funds from plaintiff's accounts and arrange loan commitments between
6   plaintiff and defendant Vensure.  (*Id.*)  Given that Childress was managing plaintiff's finances, it
7   was "unthinkable" that she was also a partner in the audit firm brought in to conduct an
8   independent analysis of plaintiff's financial affairs.  (*Id.*)  Instead, it was reasonable for plaintiff
9   to believe that it was receiving professional, objective, and independent advice from defendant
10  Meredith concerning the classification of plaintiff's debt and assets in the Audit.  (*Id.* at ¶ 16.)  It
11  was also reasonable for plaintiff to believe that defendant Meredith was acting in plaintiff's best
12  interests.  (*Id.*)  Defendant Meredith allowed plaintiff to believe that it could rely on its
13  professional opinion that the classification of debt as "goodwill" met accounting standards and
14  was appropriate under the circumstances, and plaintiff, unaware of Childress's conflict of interest,
15  did so.  (*Id.* at ¶ 17.)

16  Plaintiff did not learn of Childress's partnership in defendant Meredith until Childress was
17  deposed in the *Amazing* action on April 27, 2021.  (*Id.* at ¶ 13.)

18  Based on the above allegations, plaintiff asserts the following two claims against both
19  defendants:  (1) fraud; and (2) conspiracy to commit fraud.  (*Id.* at 8, 10.)

20  In its original complaint, plaintiff asserted the same two claims against both defendants.
21  (*See* Doc. No. 1-1.)  Both defendants moved to dismiss plaintiff's original complaint on the
22  grounds that those claims were barred by the applicable statute of limitations and that the delayed
23  discovery rule was inapplicable.  (*See* Doc. Nos. 5, 7.)  On March 13, 2025, the court issued an
24  order concluding that plaintiff's claims were time-barred and that the delayed discovery rule was
25  inapplicable because plaintiff had failed to allege both when it had discovered the alleged fraud
26  and any facts regarding its inability to discover the alleged fraud despite the exercise of
27  reasonable diligence.  (Doc. No. 27 at 6.)  The court granted defendants' motions to dismiss with
28  /////

4

1  leave to amend despite noting its skepticism that plaintiff would be able to adequately amend its
2  complaint. (*Id.* at 7–8.)
3     Plaintiff filed its FAC on April 3, 2025. (Doc. No. 28.) On April 17, 2025, defendants
4  filed their motions to dismiss plaintiff's FAC. (Doc. Nos. 29, 30.) Plaintiff filed its combined
5  opposition to both pending motions on May 8, 2025. (Doc. No. 36.) Defendants Meredith and
6  Vensure filed their replies thereto on May 14, 2025 and May 16, 2025, respectively. (Doc.
7  Nos. 37, 38.)

**LEGAL STANDARD**

9     The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal
10 sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.
11 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of
12 sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901
13 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to
14 relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A
15 claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw
16 the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*
17 *Iqbal*, 556 U.S. 662, 678 (2009).
18    In determining whether a complaint states a claim on which relief may be granted, the
19 court accepts as true the allegations in the complaint and construes the allegations in the light
20 most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However,
21 the court need not assume the truth of legal conclusions cast in the form of factual allegations.
22 *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not
23 require detailed factual allegations, "it demands more than an unadorned, the-defendant-
24 unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers
25 mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."
26 *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements
27 of a cause of action, supported by mere conclusory statements, do not suffice."). It is
28 inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the

5

defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss brought under Rule 12(b)(6), the court is permitted to consider material that is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiffs' complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

## ANALYSIS

**A.     Defendant Vensure's Motion to Dismiss**

In its motion to dismiss, defendant Vensure again argues that plaintiff's claims are barred by California's three-year statute of limitations applicable to actions grounded in fraud. (Doc. No. 29 at 12.)

     1.     Request for Judicial Notice

In connection with its pending motion, defendant Vensure requests that the court take judicial notice of various documents filed in the *Amazing* action. (Doc. No. 29-2 at 2.) Defendant Vensure emphasizes the purported importance of the court's consideration of two documents in particular. First, defendant Vensure highlights various allegations in plaintiff's counterclaim filed in the *Amazing* action on September 11, 2019. (Doc. No. 29 at 16.) In that counterclaim, plaintiff alleged the following regarding the characterization of the $2.7 million discussed above:

> In sum, Accuire would buy out the Bean Team, and Amazing Insurance would only put [d]own $300,000 cash out of a total purchase price of $2.7 million. Amazing Insurance would pay the rest, over time, to Accuire, which would cover Accuire's note payments to the Bean Team. . . .
>
> [However, n]otably absent from [the final deal] is Amazing Insurance's or Campos's obligation to make any payments beyond the initial $300,000 in exchange for receiving all of the Membership Units at closing.

(*Amazing*, Doc. No. 16 at ¶¶ 22, 28.) Plaintiff further alleged the following regarding Childress's role in the alleged scheme:

6

|   |   |
|---|---|
| 1 | Campos also relied on Kara Childress, Vensure Employer Service's ("Vensure's") COO, to enact his tortious activities against DiManno and Accuire. . . . Childress, a Campos insider, would become an important actor at Accuire to assist Campos in sweeping the Accuire operating account . . . . |

Campos also relied on Kara Childress, Vensure Employer Service's ("Vensure's") COO, to enact his tortious activities against DiManno and Accuire. . . . Childress, a Campos insider, would become an important actor at Accuire to assist Campos in sweeping the Accuire operating account . . . .

Campos—with the assistance of Jain and Childress—had started "sweeping" Accuire's accounts, emptying them when as soon as money was deposited [sic]. . . .

Childress [was] draining and abusing Accuire. . . .

Childress had access to Accuire's bank accounts and made use of those positions to siphon money to Campos, Amazing Insurance, and Campos-owned entities. . . .

Childress then negotiated agreements on Campos's and Vensure's behalf so that Vensure would loan Accuire money. Those funds would then be funneled to Campos, while leaving Accuire on the hook to repay them to Vensure. . . .

Childress, following Campos's directions, wired out at least $400,000 from Accuire's California account, to Campos directly . . . .

Campos, relying on Childress, repeatedly "cleaned out" Accuire's accounts. . . .

Defendants . . . did cooperate to engage in fraud, misleading, and the financially draining of Accuire [sic].

(*Id.* at ¶¶ 24, 53, 54, 58–61, 116.) On the basis of these allegations, plaintiff asserted claims against Childress for conversion and civil conspiracy in its counterclaim filed in the *Amazing* action. (*Id.* at 29.)

Second, defendant Vensure directs the court's attention to certain passages in the deposition testimony of Michael DiManno, a member of plaintiff's management, filed by plaintiff as an attachment in support of its opposition to the motion for preliminary injunction in the *Amazing* action on November 14, 2019. (Doc. No. 29 at 18.) Excerpts of that deposition testimony include the following:

There were some things done during this financing with Sterling that were specifically the result of [Campos's] actions that I can't speak to as to what his liability will end up.

Q. What actions were those?

7

> A. They had to do with the audits and the submitting of financial information. . . .
>
> I'll give you an example. The audit was always late, and the 2017 audit was done by Kara Childress's CPA firm. When they did the audit, they made substantial changes to the balance sheet, which threw the loan in default, and those were changes that I refused to sign, my CFO refused to sign . . . .

(*Amazing*, Doc. No. 26-2 at 33–34.)

In its opposition, plaintiff does not address—nor could it reasonably oppose—defendant Vensure's request for judicial notice. The court therefore takes judicial notice of the existence of the documents filed on the docket in the *Amazing* action. *See, e.g.*, *Brave & Free Santa Cruz v. Aragon*, No. 2:24-cv-02312-DAD-JDP, 2025 WL 306594, at *2 n.3 (E.D. Cal. Jan. 27, 2025) ("Plaintiffs have requested judicial notice of . . . an affidavit filed in another case (Ex. 19). . . . The court [ ] takes judicial notice of the existence of exhibit 19 as a court filing.").

    2. <u>Whether Plaintiff's Claims Against Defendant Vensure are Time-Barred</u>

When a federal court's "jurisdiction rests on the parties' diversity of citizenship, [the federal court must] apply substantive state law, including state law regarding statutes of limitations and tolling." *G&G Prods. LLC v. Rusic*, 902 F.3d 940, 946 (9th Cir. 2018). "In California, the statute of limitations for fraud and conspiracy to commit fraud claims is three years . . . ." *MSP Recovery Claims, Series LLC v. Avanir Pharms., Inc.*, No. 22-cv-01026-DOC-KES, 2022 WL 17220647, at *4 (C.D. Cal. Oct. 20, 2022); *see also* Cal. Civ. Proc. Code § 338(d) (establishing a three-year statute of limitations for an "action for relief on the ground of fraud"). Here, the alleged fraud occurred in 2018. (Doc. No. 28 at ¶¶ 10–11.) Plaintiff did not file its complaint initiating this action until 2024. (Doc. No. 1-1 at 1.) Plaintiff's claims are time-barred unless some exception to the applicable statute of limitations, such as the discovery rule or fraudulent concealment, acts to save plaintiff's claims.

Defendant Vensure argues that the delayed discovery rule is inapplicable here because plaintiff has failed to allege facts establishing that it lacked inquiry notice, i.e., establishing its inability to have discovered the alleged fraud earlier despite the exercise of reasonable diligence, as required by the delayed discovery rule. (Doc. No. 29 at 12–22.)

8

In its opposition, plaintiff acknowledges that a three-year statute of limitations applies to its claims but argues that defendant Vensure's fraudulent concealment tolled the statute of limitations. (Doc. No. 36 at 1–2.) Plaintiff argues that it was "unthinkable" that Childress would be a partner in the audit firm brought in to conduct an independent audit of Accuire's financial affairs when she was also managing Accuire's finances. (*Id.* at 2.) Plaintiff also argues that at the time it filed its claims in the *Amazing* action, it was reasonable for it to believe without further inquiry that the Audit was properly conducted because plaintiff was unaware of defendant Meredith's alleged conflict of interest, because the AICPA Code of Conduct directs members to be free of conflicts of interest, and because defendant Meredith's engagement letter to Accuire made no reference to a conflict of interest concerning Childress. (Doc. No. 36 at 3.) According to plaintiff, it therefore had no reason to suspect that defendant Meredith's independence was compromised until Childress disclosed her partnership in defendant Meredith on April 27, 2021.[3] (*Id.*) Plaintiff also contends that Childress's partnership was actively concealed, though plaintiff concedes that "no inquiry was made as to whether Childress was a partner in Meredith during the 2017 Audit, or later." (*Id.* at 4.) Indeed, plaintiff's FAC does not contain any allegations describing any investigation into the circumstances of the selection of defendant Meredith or the conduct of the Audit.[4]

Plaintiff additionally argues that "in the face of active concealment . . . an analysis of whether Accuire was placed on inquiry notice is of little significance." (Doc. No. 36 at 7.) Plaintiff is incorrect in this regard. "A close cousin of the discovery rule is the well accepted principle of fraudulent concealment." *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1055 (9th Cir. 2008) (citing *Bernson v. Browning-Ferris Indus. of Cal., Inc.*, 7 Cal. 4th 926,

---

[3] Because plaintiff's claims must in any event be dismissed as time-barred for the reasons set forth below, the court assumes for the purposes of the pending motions that because April 27, 2024, was a Saturday, Federal Rule of Civil Procedure 6(a) extended the statute of limitations until the following weekday, Monday, April 29, 2024.

[4] Plaintiff also argues that no publicly available records identify Childress as ever being a partner in Meredith, and that defendant Meredith's website does not list her as a partner in the firm. (*Id.* at 4.) However, plaintiff has not included any allegations to this effect in its FAC.

9

931 (1994)). "A defendant's fraud in concealing a cause of action against him will toll the statute of limitations, and that tolling will last as long as a plaintiff's reliance on the misrepresentation is reasonable." *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 637 (2007). "In order to establish fraudulent concealment, the complaint must show . . . that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts *sufficient to put him on inquiry*." *Platt Elec.*, 522 F.3d at 1055 (quoting *Baker v. Beech Aircraft Corp.*, 39 Cal. App. 3d 315, 321 (1974)) (emphasis added). "[I]t must be shown that in the exercise of reasonable diligence the facts could not have been discovered at an earlier date." *Id.* (quoting *Baker*, 39 Cal. App. 3d at 321). The doctrine of fraudulent concealment is "sometimes referred to" as "equitable estoppel." *Lukovsky v. City & Cnty. of S.F.*, 535 F.3d 1044, 1051 (9th Cir. 2008); *see also Bernson*, 7 Cal. 4th at 931 ("Like the discovery rule, the rule of fraudulent concealment is an equitable principle designed to effect substantial justice between the parties; its rationale 'is that the culpable defendant should be estopped from profiting by his own wrong to the extent that it hindered an "otherwise diligent" plaintiff in discovering his cause of action.'").

In its FAC, plaintiff has alleged that it was required to submit an audit to the Bank in 2018, Childress chose defendant Meredith to conduct that audit, Childress managed Accuire's debt, the Audit by Meredith mischaracterized Accuire's $2.7 million debt, the Bank found plaintiff to be out of compliance with its loan on that basis, plaintiff's business was seriously disrupted, and plaintiff nevertheless never inquired into the circumstances of the Audit. (Doc. No. 28.) Notably, however, on September 11, 2019, plaintiff alleged in its claims in the *Amazing* action that Childress had aided in Campos's alleged tortious activities, had emptied Accuire's accounts, was "draining and abusing Accuire," and had "funneled" money from Accuire to Campos. (*Amazing*, Doc. No. 16 at ¶¶ 24, 53, 54, 58–61.) Plaintiff's allegations in these actions show that as of September 11, 2019 it was certainly aware of information that would put a reasonable person on inquiry notice that Childress, who plaintiff was suing at that time for fraud and civil conspiracy, had not been entirely neutral in selecting the auditing company that had produced an audit report seriously disrupting plaintiff's business—specifically, one that did so by mischaracterizing Accuire's debt, an area overseen by Childress. The court could easily find

from these allegations, advanced by plaintiff in September of 2019, that the statute of limitations expired in September 2022 and grant defendant Vensure's motion to dismiss on this basis alone.

Plaintiff argues that a "reasonable businessperson would not suspect that Meredith, a well-established CPA firm, was in violation of its professional ethics simply because it prepared a supposedly independent audit that he or she disagreed with in terms of asset characterization." (Doc. No. 36 at 5.) However, the court further notes that on November 14, 2019, plaintiff filed an opposition to a motion for preliminary injunction in *Amazing* and attached thereto a copy of DiManno's October 30, 2019 deposition testimony. (*Amazing*, Doc. No. 26-2.) DiManno had testified that "Kara Childress's CPA firm" made "substantial changes to the balance sheet" which DiManno "refused to sign," that those changes "threw the loan in default," and that Campos might face liability for "this financing with Sterling" and the related "audits and the submitting of financial information." (*Id.* at 33–34.) Plaintiff therefore was in possession of information that would put a reasonable person on notice that Childress's selection of defendant Meredith was not impartial:[5] Plaintiff had filed deposition testimony given in October 2019 that its management, Michael DiManno, actually suspected that the firm chosen by Childress had tampered with the Audit and that Campos, to whom Childress allegedly reported, could face liability on that basis.[6] *See Rand v. Midland Nat'l Life Ins.*, 857 F. App'x 343, 347 (9th Cir. 2021)[7] ("[T]he

---

[5] Plaintiff argues that by "Kara Childress's CPA firm," DiManno was merely referring to the fact that Childress had selected Meredith and not suggesting that Childress was a partner in Meredith. (Doc. No. 36 at 7.) Plaintiff argues that DiManno's testimony therefore does not show that DiManno was aware of the alleged conflict of interest in 2019. However, as discussed above, the fraudulent concealment doctrine concerns inquiry notice, not actual notice. Even drawing all reasonable inferences in plaintiff's favor, assuming that DiManno was referring only to the fact that Childress had selected defendant Meredith, and assuming that DiManno lacked actual notice, plaintiff was still clearly on inquiry notice at that time as to whether Childress had been neutral in selecting the auditing company.

[6] The court emphasizes that it is not treating the contents of DiManno's deposition testimony as being true. Rather, the court merely takes judicial notice of the fact of the existence of the filing. The fact that plaintiff filed that deposition testimony with the court in October of 2019 is itself sufficient evidence that a reasonable person would have been put on inquiry notice that the Audit was fraudulent due to Childress's involvement.

[7] Citation to the unpublished Ninth Circuit opinions cited throughout this order is appropriate pursuant to Ninth Circuit Rule 36-3(b).

11

communications between Midland and Mr. Rand, on which the complaint necessarily relies and whose authenticity Plaintiffs-Appellants do not dispute, clearly establish that Mr. Rand suspected that Midland was overcharging premiums in 2012. As such, it is apparent that . . . in 2012 Mr. Rand possessed 'information of circumstances to put a reasonable person on inquiry' that he had been injured by Midland."); *see also id.* at 348 ("In other words, the first amended complaint does not contain any allegations from which it can plausibly be concluded that Midland's actions resulted in Mr. Rand waiting over seven years to file suit. . . . Accordingly, the doctrine of equitable estoppel does not apply and Mr. Rand's claims are barred by the applicable statute of limitations."). Moreover, the existence of DiManno's deposition testimony, in which he expressly stated that Campos could face liability for the mischaracterization of the debt in the Audit, severely undercuts plaintiff's current argument that a "reasonable businessperson would not suspect that Meredith . . . was in violation of its professional ethics simply because it prepared a supposedly independent audit that he or she disagreed with in terms of asset characterization" (Doc. No. 36 at 5).

Even if plaintiff has sufficiently alleged fraudulent concealment on the basis of the engagement letter from defendant Meredith and the existence of the AICPA Code of Professional Conduct—an issue the court does not decide—the "fraudulent concealment doctrine 'does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim." *New Amsterdam Project Mgmt. Humanitarian Found. v. Laughrin*, 400 F. App'x 250, 251 (9th Cir. 2010) (quoting *Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson*, 96 Cal. App. 4th 884, 890–91 (2002)). Here, plaintiff's allegations, in combination with other documents of which the court has taken judicial notice, show that plaintiff was indisputably on notice of its claim in this action as of November 14, 2019 at the latest. Plaintiff's claims against defendant Vensure are therefore barred by the 3-year statute of limitations.

Accordingly, defendant Vensure's motion to dismiss plaintiff's claims asserted against it will be granted. *Cf. id.* at 251–52 (affirming the district court's grant of summary judgment where "even if there was fraudulent concealment, NAF was on inquiry notice of its claims against

the appellees by 2003 at the latest, when it knew of the underlying conversion and knew that the appellee law firm received *some* portion of the converted funds," and noting that "[t]he fact that NAF was not aware of the full extent of the appellees' participation is not dispositive"); *Platt Elec.*, 522 F.3d at 1059–60 ("After becoming aware in 1999 of its economic injury stemming from the defective heaters and UL's representations concerning their safety, Platt had a basis to question UL's representations concerning the heaters' safety. Platt's fraudulent concealment claim, filed in 2003, was therefore barred by the three-year statute of limitations. . . . The district court properly dismissed Platt's . . . claims as barred by the statutes of limitations, and did not abuse its discretion in dismissing Platt's claims without leave to amend.").

### B.     Defendant Meredith's Motion to Dismiss

Defendant Meredith argues that plaintiff's claims brought against it are time-barred for the same reasons argued by defendant Vensure. (*See* Doc. No. 30 at 12–22.) As noted, plaintiff filed a combined opposition to both pending motions. (*See* Doc. No. 36.) Consequently, for the same reasons discussed above in addressing the motion to dismiss filed on behalf of defendant Vensure, the motion to dismiss filed on behalf of defendant Meredith will also be granted.

### C.     Leave to Amend

Plaintiff was previously granted leave to amend despite the court's skepticism that it could do so. (*See* Doc. No. 27 at 7–8.) Plaintiff has again failed to supply sufficient factual allegations to support denial of defendants' motions to dismiss. Moreover, it is clear in light of the documents filed by plaintiff on the docket in the *Amazing* action, of which the court has taken judicial notice, that the granting of further leave to amend would be futile. Plaintiff will therefore not be granted further leave to amend its pleadings. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("noting that "repeated failure to cure deficiencies by amendments previously allowed" and "futility of amendment" may support denial of leave to amend).

### CONCLUSION

For the reasons explained above:

1. The motion to dismiss plaintiff's first amended complaint filed on behalf of defendant Vensure Employer Services Inc. (Doc. No. 29) is GRANTED;

2. The motion to dismiss plaintiff's first amended complaint filed on behalf of defendant Meredith CPAs P.C. (Doc. No. 30) is GRANTED;

3. Plaintiff's first amended complaint (Doc. No. 28) is DISMISSED without further leave to amend; and

4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **July 31, 2025**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

14